Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Samuel Der-Yeghiayan | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 4366 | **DATE** | 1/11/2005 |
| **CASE TITLE** | Brian Dugan vs. Briley, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
      ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons stated in the attached memorandum opinion, defendants' motion for summary judgment is granted in its entirety. All pending dates and motions are hereby stricken as moot. Terminating case. Enter Memorandum Opinion.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JAN 1 2 2005 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | 102 |
| | Copy to judge/magistrate judge. | | | |
| MW | courtroom deputy's initials | 2005 MAR 11 AM 11:03 U.S. DISTRICT COURT | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

BRIAN DUGAN, )
)
      Plaintiff, )
)
v. ) No. 03 C 4366
)
KENNETH BRILEY, et al., )
)
      Defendants. )

DOCKETED
JAN 1 2 2005

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendants' motion for summary judgment. For the reasons stated below, we grant the motion for summary judgment in its entirety.

## BACKGROUND

Dugan is currently incarcerated at Pontiac Correctional Center, but was formerly incarcerated at Stateville Correctional Center ("Stateville"). Dugan claims that Defendants, various officials at Stateville, violated his constitutional rights by denying him access to the same programs that were available to the general prison population while Dugan was confined in protective custody ("PC") at Stateville. Dugan claims that he was denied access to the prison law library, was not allowed to

1

/02

have a job at the prison, was denied access to the same religious services, and the same recreational activities, and was denied access to other programs offered by Stateville. Dugan has brought this action alleging violations of 42 U.S.C. §1983 ("Section 1983").

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In seeking a grant of summary judgment the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case." *Id.* at 325. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but, "by affidavits or as otherwise provided for in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts."

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). The court must consider the record as a whole, in a light most favorable to the non-moving party, and draw all reasonable inferences that favor the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000).

## DISCUSSION

### I. Affidavits of Inmates

Dugan attempts to support his position with his own affidavit and affidavits of several other inmates. Defendants have moved to strike the affidavits. We agree that in regards to some of the affidavits, they are not properly notarized and are not properly executed. Also, the affidavits include broad generalizations that are too vague to be of assistance to the trier of fact. The affidavits fail to point to specific complaints or dates and the trier of fact would therefore be required to speculate based upon the generalized comments included within the affidavits. Also, certain statements included in the affidavits would be misleading, unduly prejudicial, and

3

inadmissible for other evidentiary reasons as well. Therefore, we grant Defendants' motion to strike the affidavits as improper.

II. Denial of Access to the Courts Claim

Dugan argues that he was denied access to the law library. A plaintiff must show that he suffered an injury from the denial of access to the court in order to maintain a Section 1983 claim for denial of access. *Nance v. Vieregge*, 147 F.3d 589, 591 (7th Cir. 1998). For a denial of access to the courts claim "a prisoner must show that unjustified acts or conditions 'hindered his efforts to pursue a legal claim.'" *Nance v. Vieregge*, 147 F.3d 589, 591 (7th Cir. 1998)(quoting in part *Lewis v. Casey*, 518 U.S. 343, 351 (1996)). Dugan claims that his box of legal papers was in the library and that he was not able to go to the law library during November of 2001, causing his appeal in case 99 C 4382 to be dismissed. This claim is not borne out by the undisputed evidence. According to the public record docket in that case, which was dismissed by Judge Zagel on June 7, 2001, Dugan's appeal was dismissed for failure to pay the filing fee. On October 26, 2001, an order issued indicating that Dugan was required to pay the filing fee by November 7, 2001. Dugan failed to do so which resulted in the final dismissal of the appeal on November 28, 2001. He has failed to show that he was prevented from pursuing a meritorious claim, as his claim had already been dismissed. The evidence thus is undisputed that his appeal was dismissed due to his failure to pay his fling fee rather than his inability to present

adequate legal arguments. Neither has Dugan pointed to evidence that shows that his efforts were hindered in regards to the pursuit of any other legal claims. Also, the prison had to institute a general lockdown for the entire prison population for legitimate security reasons which prevented inmates from using the prison library at times. Therefore, we grant Defendants' motion for summary judgment on the denial of access to the court claim.

III. Denial of Access to Recreation

Dugan claims that his recreational activities were restricted as a result of being placed in PC. As the Seventh Circuit recognized in *Antonelli v. Sheahan*, 81 F.3d 1422 (7th Cir.1996), the "[l]ack of exercise may rise to a constitutional violation in extreme and prolonged situations where movement is denied to the point that the inmate's health is threatened." *Id.* at 1432. In *Thomas v. Ramos,* 130 F. 3d 754 (7th Cir. 1997), the Seventh Circuit discussed the conditions of confinement related to the sufficiency of exercise in prison. *Id.* at 762-64. The court held that there is no Eighth Amendment violation where a prisoner had room in his cell to do push-ups, sit-ups, jogging in place and step-ups. *Id.*

In the instant action, Dugan had much more than that. He had periodic yard access and gym access, even when in X house. Dugan complains that he could not go to the weight room, (P. Dep. pp. 73-74), and complains that PC inmates were not allowed to use the South Yard for exercise like the general population. However,

5

Dugan was in a prison, not a health club. He had no right to dictate access to his preferred workout facilities. It is not genuinely disputed that the prison must accommodate more than 2,900 inmates and thus it clearly was not practicable to tie up the South Yard for a select few PC inmates or to tie up prison staff to escort the PC inmates to the opposite side of the prison. Dugan has not shown that he suffered any injury due to being unable to exercise in his preferred place and fashion. Also, the evidence is clear that the lockdowns that limited recreational activities at times were based on legitimate security concerns. Therefore, we grant Defendants' motion for summary judgment on the claim based upon the denial of access to recreational activities.

IV. Denial of Access to Religious Activities

Dugan claims that his religious activities were restricted as a result of being placed in PC. An inmate must be allowed "to practice his religion as long as doing so does not unduly burden the institution." *Hunafa v. Murphy*, 907 F.2d 46, 47 (7th Cir. 1990). A prison regulation that affects an inmate's First Amendment rights "is valid only 'if it is reasonably related to legitimate penological interests.'" *Alston v. DeBruyn*, 13 F.3d 1036, 1039 (7th Cir. 1994)(*Turner v. Safley*, 482 U.S. 78, 89 (1987)). In order for a prisoner to succeed on his claim that a prison has violated his First Amendment right to the free exercise of religion, the prisoner must establish: "(1) that he espouses a *bona fide* religion, (2) that his beliefs are sincerely held, and

6

(3) that the activity he wishes to perform is essential to the practice of his religion." *Saunders-El v. Tsoulos*, 1 F.Supp.2d 845, 847 (N.D. Ill. 1998).

In the instant action, Dugan now claims in his affidavit that he is both a Christian and a Catholic. However, in April of 2000 he submitted a written request to the prison chaplain to change his faith from Catholic to Agnostic and the request was approved on April 6, 2000. Also, even if Dugan had shown that he was a practicing Catholic, Defendants submit undisputed evidence that indicates that in PC the prison still provided some services by having chaplains and volunteer clergy go to the living unit. Dugan has failed to point to sufficient evidence to dispute these material facts. In addition, the evidence is undisputed that religious activities for all inmates were inhibited at times during general lockdowns that were instituted for legitimate security reasons. Therefore, we grant Defendants' motion for summary judgment on the denial of access to religious activities claim.

## IV. Denial of Access to Prison Job and Classes

Dugan also claims that he was denied the opportunity to participate in a prison job and to attend educational or rehabilitative classes. However, the evidence clearly shows that after the move to X-House, due to the small number of PC inmates that were temporarily held in the X-House, there was no practical way for the prison to provide the services to those inmates. The evidence is clear that only two jobs were available to PC inmates because PC inmates cannot work in shifts

7

where they will have contact with the general population. Both positions were filled by PC inmates. In regards to the classes the evidence is also clear that it was not practical for the prison to offer classes to only a select few inmates at a time and in particular to an inmate who would likely be unable to complete the classes because of a imminent transfer.

Also, to the extent that Dugan asserts due process claims based on his denial of access to a prison job or classes, Dugan fails to point to sufficient evidence to support the claims. The limitations of procedural due process "allow[] the government to deprive a citizen of 'life, liberty, or property' only in accordance with certain procedural protections." *Doe v. City of Lafayette, Ind.*, 377 F.3d 757, 768 (7th Cir. 2004). In order to succeed on a procedural due process claim, a plaintiff must establish that there is: "(1) a cognizable property interest; (2) a deprivation of that property interest; and (3) a denial of due process." *Hudson v. City of Chicago*, 374 F.3d 554, 559 (7th Cir. 2004)(quoting *Buttitta v. City of Chicago*, 9 F.3d 1198, 1201 (7th Cir. 1993)). Dugan fails to point to evidence that would show that he had a liberty or property interest in obtaining a prison job or attending prison rehabilitation or educational classes. Therefore, we grant Defendants' motion for summary judgment on the claims based upon the denial of a prison job and the denial of access to educational and rehabilitative classes.

IV. Lack of Personal Involvement

8

Several of the Defendants argue that Dugan has failed to present evidence to show that they had personal involvement in the alleged misconduct. The Seventh Circuit has made it clear that "[t]he doctrine of *respondeat superior* does not apply to § 1983 actions. . . ." *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001). Thus, an individual cannot be held liable under Section 1983 in his individual capacity unless he "participated directly in the constitutional violation." *Hildebrandt v. Illinois Dept. of Natural Resources*, 347 F.3d 1014, 1039 (7th Cir. 2003)(stating that "Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation."). For a supervisor to be held liable under Section 1983 for acting in his supervisory role, a plaintiff must show that the supervisor directed the constitutional deprivation or that it occurred with his "knowledge and consent." *Id.* (indicating that a plaintiff must show that the supervisor knew "about the conduct and facilitate it, approve it, condone it, or turn a blind eye."). Dugan has failed to point to any evidence that indicates that Defendants Stephen Mote, Jerome Springborn, John Thomas, Donald Snyder, or George Adamson had any personal involvement in the alleged misconduct either directly or indirectly. Therefore, we grant Defendants' motion for summary judgment on all claims brought against the above mentioned Defendants.

V. Equal Protection Claim

Defendants also seek summary judgment on the equal protection claim. The Equal Protection Clause provides "to all Americans the right to be free from invidious discrimination in statutory classifications and other governmental activity." *Nabozny v. Podlesny,* 92 F. 3d 446, 453 (7th Cir. 1996) (quoting *Harris v. McRae,* 448 U.S. 297, 322 (1980)). Under the traditional equal protection analysis, if the alleged class is not a suspect class, the court "will address [the plaintiff's] equal protection claim under the familiar rational basis test, . . .[and rule for the defendant] if 'there is any reasonably conceivable state of facts that could provide a rational basis for the classification.'" *Zambrano v. Reinert,* 291 F.3d 964, 970 (7th Cir. 2002)(quoting in part *FCC v. Beach Communications, Inc.,* 508 U.S. 307, 313 (1993)).

Dugan claims that the class of PC inmates were discriminated against and treated differently than the general population. However, as explained above Dugan has failed to point to evidence that would indicate that there were any significant differences in the treatment of PC inmates. The undisputed evidence clearly shows that all the measures taken in regards to PC inmates were taken for valid security reasons in order to promote the welfare and protection of the inmates. Therefore, we grant Defendants' motion for summary judgment on the equal protection claims.

## CONCLUSION

Based on the foregoing analysis, we grant Defendants' motion for summary judgment in its entirety on all claims.

Samuel Der-Yeghiayan
United States District Court Judge

Dated: January 11, 2005